UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at KNOXVILLE

| HEALTHSTAR, LLC, *et al.*, | ) | |
|---|---|---|
| *Plaintiffs,* | ) | |
| | ) | No. 3:18-CV-434 |
| v. | ) | |
| | ) | Judge Collier |
| DYNAMIC VISION, INC., *et al.*, | ) | |
| *Defendants.* | ) | |

# **M E M O R A N D U M**

Before the Court is Defendant Axene Health Partners, LLC's ("Axene") motion to dismiss Plaintiffs Healthstar, LLC, and Healthstar EVV, LLC's (collectively, "Healthstar") Fourth Amended Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). (Doc. 96.) Healthstar filed a response in opposition (Doc. 104), and Axene replied (Doc. 106).

For the reasons below, the Court will **GRANT** Axene's motion to dismiss (Doc. 96) and **DISMISS** all claims against Axene **WITHOUT PREJUDICE**.[1]

## **I.    BACKGROUND**[2]

This case involves a technology called Electronic Visit Verification ("EVV"), which is used by insurance companies to ensure individuals who give home or community-based medical care actually perform the services they claim to have provided. Healthstar is a corporation

---

[1] Axene also requested an evidentiary hearing. The Court has discretion to grant a hearing to resolve factual issues. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). However, in this case, the briefs and affidavits submitted provide the Court with adequate evidence to decide the issue of personal jurisdiction without the benefit of a hearing.

[2] Because the matter is before the Court on a motion to dismiss, the following summary of the facts makes all inferences in favor of the non-moving party, Healthstar. *See Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012).

incorporated and with its principal place of business in Tennessee that specializes in EVV programs. It developed an EVV program using Global Positioning Satellite ("GPS") technology, a feature which makes its program unique in the EVV market. To develop this technology, Healthstar entered into a contract with Dynamic Vision Incorporated ("Dynamic Vision" or "DV"). Dynamic Vision is a closely held corporation that is incorporated and has its principal place of business in California. Michael Gill serves as Dynamic Vision's sole director, as well as its chief executive officer, chief financial officer, and secretary.

In October 2017, Gill sent Healthstar an email "announcing a merger with Axene Health Partners!" (Doc. 104-1.) Axene is a company which provides consulting and software solutions within the healthcare industry; it is incorporated and has its principal place of business in California. The email continued, "[w]hile Dynamic Vision will remain a fully self-contained operation, this news signifies a partnership with [Axene.]" (*Id.*) It indicated Dynamic Vision "will continue to operate as DV"; there would be "[n]o changes to our team or people"; and Gill would "continue as the sole operator of DV." (*Id.*) The email explained Axene would provide financial and administrative support to Dynamic Vision. (*Id.*) Attached to the email was a press release. The press release similarly announced the "merger" and represented Gill's continued role in operating the business. (*Id.*)

Despite these announcements, Axene and Dynamic Vision never formally merged. By late October, both Gill and Axene's CEO understood the companies would not merge. Axene, however, absorbed all of Dynamic Vision's employees, as well as the employees' laptops

2

originally provided by Dynamic Vision.  Gill also became an officer of Axene.  Axene did not provide any of its stock to Dynamic Vision.

While Dynamic Vision no longer had any employees, Gill remained an officer of Dynamic Vision, and Dynamic Vision continued its work with Healthstar on the EVV contract.  Healthstar and Dynamic Vision executed four addendums to their original contract, all of which identified Healthstar and Dynamic Vision as the only parties to the agreement.   As Dynamic Vision worked on this contract, Axene and Dynamic Vision executed a separate contract in California.  The contract provided that former Dynamic Vision, now Axene, employees, would work for Dynamic Vision on the Healthstar project.

In June 2018, Axene entered into a service agreement with Sandata Technologies, LLC ("Sandata"), one of Healthstar's competitors.  The agreement between Axene and Sandata provides Sandata a license for a "Request for Services (RFS) web-based application software . . . that allows [customers] the ability to electronically request, select and authorize services with an eligible provider to one of its patients, members, consumers or individuals . . . ." (Doc. 104-15.)  The contract generally dealt with the same EVV technology that Dynamic Vision agreed to develop for Healthstar.[3]  Sandata and Axene also entered into an agreement with Pulsewrx, Inc., ("Pulsewrx"), a corporation incorporated and with its principal place of business in Ohio, to offer EVV services to Managed Care Organizations.

---

[3] The Court notes, however, that the agreement between Sandata and Axene never uses the term EVV or represents that it verifies what services a healthcare worker provides.  Nevertheless, making all inferences in Healthstar's favor, the Court will assume the two contracts deal basically with the same technology.

3

Axene, in collaboration with Sandata, Dynamic Vision, and Pulsewrx, created a presentation shown throughout the country that promised solutions based on EVV technology. One such presentation occurred in Tennessee. At the presentation, the companies represented they were interested in attracting business through EVV technology. Gill planned to come to the meeting, but the parties dispute if he actually arrived in Tennessee.

Healthstar brought this lawsuit alleging, *inter alia*, Dynamic Vision remained in possession of its EVV system. It requested the Court issue an injunction to compel Axene, Dynamic Vision, and Gill to transfer the EVV technology back to Healthstar, as well as a declaratory judgment as to the rights of each party in the EVV system. It further claims Dynamic Vision breached their contract. Healthstar asserts Axene is liable for this breach because Axene is a successor in interest to Dynamic Vision, or in the alternative, Axene is liable for fraudulent misrepresentation based on Gill's email announcing the merger. Healthstar also claims Axene is liable for theft of trade secrets and tortious interference of contractual and business relations.

Axene moves to dismiss the case on the ground that this Court does not have personal jurisdiction over it. Healthstar argues that Axene is subject to personal jurisdiction for two reasons: (1) Axene has assumed the obligations of Dynamic Vision and, therefore, the contract with Healthstar, a Tennessee corporation; and (2) Healthstar directed tortious activity towards Tennessee. Both parties conducted limited discovery for the purposes of personal jurisdiction in which one relevant discovery dispute arose. During Gill's deposition, Gill's counsel instructed him not to answer two questions: "[H]ave you been involved in any business ventures with Mr. Dillon other than Healthstar" and "Did Mr. Dillon get you involved in a strategic partnership with

4

Sandata?" (Doc. 104-3 at 155.) Healthstar has not moved to compel any information from Gill based on his failure to answer these questions.

## II. STANDARD OF REVIEW

On a motion to dismiss for lack of personal jurisdiction, the "party seeking to assert personal jurisdiction bears the burden" of proving the court has jurisdiction over the defendant. *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003). When a question of jurisdiction is decided without an evidentiary hearing, the plaintiff need only make a *prima facie* showing that jurisdiction is proper. *Theunissen*, 935 F.2d at 1458. To meet this standard, the plaintiff cannot "stand on his pleadings, but must show the specific facts demonstrating that the court has jurisdiction." *Miller*, 694 F.3d at 678.

## III. DISCUSSION

A court's exercise of personal jurisdiction is proper if it is consistent with both the long-arm statute of the state in which it sits and the Due Process Clause of the Fourteenth Amendment. *Youn*, 324 F.3d at 417. Tennessee's long-arm statute provides that a court can hear any case as long as doing so is consistent with the Due Process Clause. *Payne v. Motorists' Mut. Ins. Cos.*, 4 F.3d 452, 455 (6th Cir. 1993) (citing *Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn. 1985)). Therefore, the Court need only determine whether its exercise of personal jurisdiction over Axene is consistent with Due Process.

Personal jurisdiction can be specific or general. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549–50 (6th Cir. 2007). Healthstar asserts the Court has specific jurisdiction over Axene. While the Court cannot "resort to 'talismanic jurisdictional formulas' for

5

resolving questions of personal jurisdiction," the Court of Appeals for the Sixth Circuit uses a three-part test to determine whether specific jurisdiction exists. *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1294, 1299–30 (6th Cir. 1989) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 485 (1985)).

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* at 1299 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 410 F.2d 374, 381 (6th Cir. 1968)). If any element is not met, the Court lacks personal jurisdiction over the defendant. *Id.* at 1303.

The first element, purposeful availment, requires that the defendant "acted or caused a consequence in [the forum] such that he invoked the benefits and protections of [the forum's] law." *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 900 (6th Cir. 2017). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp.*, 471 U.S. at 475 (internal quotations and citations omitted). Rather, an individual purposely avails himself of the forum's laws when he intentionally engages in "significant activities within a State" or creates "continuing obligations between himself and residents of the forum." *Id.* at 475–76 (internal quotations omitted).

The Court's determination of Axene's purposeful availment is outcome-determinative to its jurisdictional finding, and thus, only that element will be discussed. Healthstar asserts Axene has purposely availed itself of Tennessee law in four ways: (1) its merger with Dynamic Vision;

6

(2) its alleged fraudulent communication; (3) its sale of EVV technology; and (4) its contractual relationship with Healthstar. The court will address in turn whether any of these actions constitute purposeful availment, as required for personal jurisdiction.

### A. Axene's Merger with Dynamic Vision

Healthstar alleges Axene is Dynamic Vision's successor in interest and, as a result, Axene purposefully availed itself of Tennessee law by entering into the contract with Healthstar. Healthstar argues the companies completed a de facto merger or, in the alternative, Axene should be estopped from claiming there was no merger. Axene contends no merger occurred and neither party represented that a merger occurred.

#### 1. De Facto Merger

Whether a de facto merger occurred raises a question of what state's law applies. California law may apply because the relevant transaction between Dynamic Vision and Axene occurred entirely in California. However, Tennessee law also may apply because the transaction may have defrauded a Tennessee corporation, Healthstar. Neither Axene nor Healthstar briefed this conflict-of-laws issue, and while acknowledging a conflict, they applied Tennessee law in their briefs. (*See* Doc. 104 at 37–38; Doc. 106 at 22–23.)

To determine what state's law applies to the question of de facto merger, the Court applies the conflict-of-law rules of Tennessee, the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Tennessee law, the first step is to determine whether the laws of the states actually conflict. *Boswell v. RFD-TV the Theater, LLC*, 498 S.W.3d 550, 555 (Tenn. Ct. App. 2016). If the outcome would be identical under the same set of facts, a further

7

choice-of-law analysis is not required. *Cf. Monroe v. Novartis Pharms. Corp.*, 29 F. Supp. 3d 1115, 1129 (S.D. Ohio 2014). Thus, the Court must assess whether a de facto merger occurred under either Tennessee or California law.

Under Tennessee law, a de facto merger occurs when "there is a sale of substantially all of one corporation's assets in exchange for the stocks and bonds of the purchasing corporation." *Layne Christensen Co. v. City of Franklin, Tenn.*, 449 F. Supp. 3d 748, 757 (M.D. Tenn. 2020) (quoting *Signature Combs, Inc. v. United States*, 331 F. Supp. 2d 630 (W.D. Tenn. 2004)); *see also Jennings Neff & Co. v. Crystal Ice Co.*, 159 S.W. 1088, 1089 (Tenn. 1913). The Sixth Circuit has identified five "hallmarks" of when a transaction becomes a de facto merger:

> (1) continuation of the enterprise of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operations; (2) continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation; (3) the seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and (4) the purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.

*In re Wright Enters.*, 77 F. App'x 356, 369 (6th Cir. 2003).[4]

At the outset, Healthstar faces a substantial hurdle. Healthstar has not produced any evidence Axene transferred any stock to Dynamic Vision in exchange for its assets, the laptops. At least one court has held the lack of a transfer of stock is fatal to a claim of a de facto merger

---

[4] Although *In re Wright Enterprises* addresses de facto merger under Kentucky law, courts have used the same five-factor test to evaluate de facto merger under Tennessee law. *See, e.g.*, *Carrier Corp. v. Piper*, 2:05-cv-02307, 2009 WL 10664807, at *5–6 (W.D. Tenn. Aug. 31, 2009).

8

under Tennessee law. *Layne Christensen Co.*, 449 F. Supp. 3d at 757–58. Healthstar states the evidence "suggests Gill took an ownership," (Doc. 104 at 39), but to survive a Rule 12(b)(2) motion, a party must produce evidence that a transfer actually occurred. *See Miller*, 594 F.3d at 678–79.

Even if a transfer of stock is not fatal to finding a de facto merger occurred, three "hallmarks" of a de facto merger demonstrate no merger occurred in this case. *See In re Wright Enters.*, 77 F. App'x at 369. First, there was no continuity of shareholders.[5] Because there was no exchange of stock, Dynamic Vision's shareholders never retained any interest in the assets transferred to Axene. Second, Dynamic Vision did not dissolve as soon as legally and practically possible; it continued to operate independently. Finally, there is no evidence Axene assumed the liabilities and obligations of Dynamic Vision ordinarily necessary for the continuation of normal business operations. While former Dynamic Vision workers assisted with Dynamic Vision's projects, Gill and Axene stated the employees were hired out by Dynamic Vision. Thus, Healthstar has failed to demonstrate a de facto merger occurred under Tennessee law.

Under California law, a de facto merger can occur when there is a sale of substantially all of one corporation's assets to another corporation. *See Marks v. Minn. Mining & Mfg. Co.*, 187

---

[5] A continuity of shareholders requires a transfer of stock, so the original shareholders still own the assets transferred away. Consider the example of a company, Widget Co., that owns a thousand dollars in widgets. If another company, Buyer Co., which owned nothing but had 10 shares of its own, bought Widget Co.'s widgets for nine of its own shares, the shareholders of Widget Co. would receive the shares of Buyer Co. and, in this hypothetical, maintain 90% of their interest in the widgets. *See* Marie T. Reilly, *Making Sense of Successor Liability*, 31 Hofstra L. Rev. 745, 770–71 (2003). The continuity of the asset being owned in part by the same parties is a continuity of shareholders.

9

Cal. App. 3d 1429, 1436 (Cal. Ct. App. 1986). To determine whether a de facto merger has occurred in such a case, courts consider five factors:

> (1) was the consideration paid for the assets solely stock of the purchaser or its parent; (2) did the purchaser continue the same enterprise after the sale; (3) did the shareholders of the seller become shareholders of the purchaser; (4) did the seller liquidate; and (5) did the buyer assume the liabilities necessary to carry on the business of the seller?

*Id.* These factors are substantially similar, if not identical, to the "hallmarks" stated above. *See In re Wright Enters.*, 77 F. App'x at 369.

Under these factors, a de facto merger did not occur between Axene and Dynamic Vision under California law. Axene did not pay for any assets by giving stock to Dynamic Vision. Dynamic Vision did not liquidate following this "merger." Axene did not assume the liabilities necessary to carry on Dynamic Vision's business. Thus, the Court concludes no de facto merger occurred under California law.

In conclusion, under both Tennessee and California law, the transaction which created the business relationship between Axene and Dynamic Vision was not a de facto merger. As the laws of Tennessee and California do not conflict, the Court will not proceed in the choice-of-law analysis. *Cf. Monroe*, 29 F. Supp. 3d at 1129. Therefore, on the ground of de facto merger, Axene is not a successor in interest to Dynamic Vision, and Dynamic Vision's contacts with Tennessee cannot be attributed to Axene.

### 2. Estoppel

Healthstar asserts Axene should be equitably estopped from denying its merger with Dynamic Vision. To succeed on this argument, Healthstar must prove: (1) Axene misrepresented

10

the alleged merger; (2) Healthstar reasonably relied on the misrepresentation; and (3) Healthstar relied on the misrepresentation to its detriment. *See Mich. Exp. Co. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004) (citing *LaBonte v. United States*, 233 F.3d 1049, 1053 (7th Cir. 2000)).[6]

Healthstar argues Axene misrepresented the alleged merger through an email sent by Gill and a press release, both of which included a statement that the companies had merged. Healthstar states the email is fraudulent because it begins "Dynamic Vision is announcing a merger with Axene Health Partners!" (Doc. 104-1.) But the email continued "Dynamic Vision will remain a fully self-contained operation." (*Id.*) It also stated: "We will continue to operate as DV [Dynamic Vision]"; "I will continue as the sole operator of DV"; "this news signifies a partnership." (*Id.*) The email also explained the extent of the newly formed business relationship—Axene was to provide "financial backing and support" as well as "administrative support." (*Id.*) The press release similarly stated "Michael Gill, DV's founder and sole owner will continue to operate Dynamic Vision and its business." (*Id.* at 4.)

Based on the email and press release, Axene is not estopped from denying it merged because Axene did not misrepresent the transaction and Healthstar did not rely on it. As to any misrepresentation, although the term "merger" was used, the other statements in the email made it clear that both companies would survive. In a merger between two companies, one company survives, and the other company ceases to exist. *See generally* Cal. Corp. Code Ann. § 1110 (West

---

[6] Even in diversity actions, "[f]ederal standards govern the application of judicial estoppel in federal court." *Pennycuff v. Fentress Cnty. Bd. of Educ.*, 404 F.3d 447, 452 (6th Cir. 2005) (quoting *Warda v. C.I.R.*, 15 F.3d 533, 538 at n.4 (6th Cir. 1994)).

11

2020); *Merger*, *Black's Law Dictionary* (11th ed. 2019). The email announced the companies were starting some sort of a partnership, rather than merging.

There is also no evidence Healthstar relied on the representation. Since the time of the alleged merger, Healthstar signed four addendums to its contract with Dynamic Vision. Healthstar never requested Axene be added as a party to their agreement. The evidence suggests Healthstar clearly understood Dynamic Vision had not ceased to exist as an entity because Healthstar contracted exclusively with Dynamic Vision. Even if it had relied on the use of "merger" in the email, such reliance would have been unreasonable, as the rest of the contents unambiguously clarified that the transaction was not a true merger. The email could have been better worded, but it falls short of establishing estoppel.[7]

Thus, Axene is not estopped from claiming it did not merge with Dynamic Vision. The companies did not undergo a de facto merger under either Tennessee or California law. Therefore, Axene is not a successor in interest to Dynamic Vision, and Dynamic Vision's contacts with Tennessee cannot be attributed to Axene. Therefore, Healthstar must rely on other contacts to establish that Axene purposefully availed itself of Tennessee law.

---

[7] While Healthstar identifies some representations made to others that the companies had merged, estoppel requires "reasonable reliance on *the* misrepresentation." *Mich. Exp.*, 374 F.3d at 377 (emphasis added). Healthstar produced no evidence that it was aware of these statements at any time before this litigation. Thus, they are not relevant in this case.

12

### B. Axene's Allegedly Fraudulent Communication

Healthstar argues Axene purposefully availed itself of Tennessee law because it directed allegedly fraudulent communication to Tennessee through Dynamic Vision's email announcing the "merger." Axene argues it was not responsible for this communication, as it was sent by Dynamic Vision and Gill. Healthstar agrees the email is the only communication that allegedly contains fraudulent information directed to Tennessee, but it asserts the single act of sending the fraudulent communication is sufficient to establish purposeful availment.

In support of its argument, Healthstar relies on *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001). However, in *Janssen*, the Sixth Circuit found personal jurisdiction was appropriate because the defendant "did not make just one phone call to plaintiffs in Tennessee in an effort to solicit business from them, but instead" engaged in numerous communications with the plaintiff. *Id.* Indeed, the Sixth Circuit concluded "[t]he conduct here was much more than a single phone call made in an effort to start a business relationship." *Id.* at 333 (emphasis omitted). *Janssen* does not hold one contact is sufficient, but instead that when multiple fraudulent contacts form the basis of the complaint, they can be sufficient to prove purposeful availment even when the defendant never entered the state. *Id.* The Court's understanding of *Janssen* is consistent with Supreme Court precedent on personal jurisdiction in cases of intentional torts. *See Calder v. Jones*, 465 U.S. 783, 788–89 (1984) (describing the conflux of factors which established California's jurisdiction over the defendant). Thus, the Court holds that the single allegedly fraudulent communication does not establish purposeful availment.

13

Even if one contact could be sufficient, the email in this case could not show purposeful availment because it was not sent by Axene. The "unilateral activity of another party or a third person" is not sufficient to establish purposeful availment. *Burger King Corp.*, 471 U.S. at 476 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). The email was sent by Michael Gill, from his Dynamic Vision email and on behalf of Dynamic Vision. Dynamic Vision cannot cause Axene to purposefully avail itself of another forum's law. Therefore, this allegedly fraudulent communication cannot establish Axene purposefully availed itself of Tennessee law.

### C. Axene's EVV Sales

Healthstar argues Axene purposefully availed itself of Tennessee law based on its sales of the EVV technology in Tennessee, which it contends was tortious interference. In cases involving intentional torts, the defendant may purposefully avail themselves of the law of the forum state if the defendant "purposefully directs activities towards the forum state with the intent to cause harm there." *Scotts Co. v. Aventis S.A.*, 145 F. App'x 109, 113 (6th Cir. 2005). To prove "harm" was directed to the forum, there needs to be some, though slight, evidence of the underlying tort. *See id.* at 114 (considering *prima facie* case of tortious interference claim while deciding motion to dismiss under Federal Rule 12(b)(2)); *Higdon v. Cannon*, 1:11-CV-194, 2012 WL 424965, at *8 (E.D. Tenn. Feb. 9, 2012) ("[T]he plaintiff must do more than merely allege intentional tortious conduct which has injured a forum state resident."). In short, to demonstrate purposeful availment, Healthstar needs to show a *prima facie* case of the underlying tort, tortious interference.

Under Tennessee law, a claim of tortious interference requires the plaintiff to demonstrate:

14

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's *improper motive or improper means*; and finally, (5) damages resulting from the tortious interference.

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (internal citations and footnotes omitted).[8] Tennessee courts have not precisely defined the phrase "improper motive or improper means." The phrase often refers to "those means that are illegal or independently tortious, such as . . . misuse of inside or confidential information, . . . and those methods that violate an established standard of a trade or profession, or otherwise involve unethical conduct, such as sharp dealing, overreaching, or unfair competition." *Id.* at 701 n.5.

Axene's use of Healthstar's EVV technology to compete with Healthstar is the only allegation that could constitute an improper motive or means, as it is allegedly sharp dealing or theft of trade secrets.[9] If Healthstar presents no evidence that the EVV products Axene sold in Tennessee were made by improperly using information Dynamic Vision obtained from Healthstar, then Healthstar cannot prove a claim for tortious interference. A failure to present evidence of a

---

[8] Tennessee law applies to the tort claim in this action because it has a more significant relationship to the claim of tortious interference of contract and business relationships. *See Hataway v. McKinley*, 830 S.W.2d 53 (Tenn. 1992); *Restatement (Second) of Conflict of Laws* (Am. Law Inst. 1971).

[9] Healthstar also asserts the breach of contract constituted improper means. However, as Axene is not a successor in interest to Dynamic Vision, it was not a party to any contract between Dynamic Vision and Healthstar and therefore could not breach the contract.

15

claim of tortious interference means that Healthstar cannot prove that Axene directed harm towards Tennessee.

To constitute sharp dealing or theft of trade secrets, there must be some evidence that Axene used information that was improperly acquired from Dynamic Vision or Healthstar. *Miller*, 694 F.3d at 678–79; *Trau-Med of Am.*, 71 S.W.3d at 701. Healthstar asserts it has proven the underlying tort because: (1) Axene had not created an EVV program before it partnered with Dynamic Vision; and (2) Gill refused to answer questions about theft of trade secrets in his deposition.

The first assertion fails, as Healthstar has not provided sufficient evidence to support it. Healthstar does not cite and the Court is not aware of any cases where timing of the development of a product alone sufficed to demonstrate even a *prima facie* case for theft of trade secrets or tortious interference. Axene developed a program around the same time that it partnered with Dynamic Vision, but Healthstar presented no evidence of impropriety by either party. Therefore, Healthstar's assertion that the timing of Axene's development of the EVV program alone is sufficient to prove theft of trade secrets is inaccurate and cannot provide a basis to show an "improper motive or improper means." *Trau-Med of Am.*, 71 S.W.3d at 701.

The second assertion likewise fails, as the discovery dispute regarding Gill's refusal to answer certain questions at his deposition does not change the outcome. Healthstar cites two questions that Gill's counsel instructed him not to answer: "[H]ave you been involved in any business ventures with Mr. Dillon other than Healthstar" and "Did Mr. Dillon get you involved in a strategic partnership with Sandata?" (Doc. 104-3 at 155.) However, Healthstar does not explain

16

how answers to these questions would reveal evidence Axene used stolen data in the EVV program. In addition, there is no presumption that when an individual does not answer a question in a deposition, even if she is following erroneous instructions from her lawyer, the answer is presumed to be harmful to the non-answering party. Regardless, Healthstar had a remedy for Gill's failure to answer those questions, a motion to compel under Federal Rule of Civil Procedure 37(a)(3)(B)(i). The remedy Healthstar requests—an assumption that the information in Gill's answers would support its claim—is not supported by federal law. *See* 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2113 (3d ed. 2020).

Healthstar produced no evidence of an improper motive or means based on theft of trade secrets, meaning it also has failed to make out the *prima facie* case of the underlying tort. As a result, Axene's allegedly tortious conduct cannot establish Axene purposefully availed itself of Tennessee law.

Furthermore, Healthstar failed to argue that it suffered any damage, another element of tortious interference of contract. *See Trau-Med of Am.*, 71 S.W.3d at 701. It alleges Axene may have used a similar technology in a single pitch in Tennessee where Axene presented with many other companies. However, it does not provide any evidence that it lost business. Indeed, Healthstar has presented no evidence that Axene currently has any business in Tennessee. Thus, Healthstar has failed to prove the damages element of a *prima facie* case of Axene's alleged tort.

In conclusion, Healthstar has not proven a *prima facie* case that Axene committed an intentional tort in Tennessee. Thus, it has not proven Axene "purposefully direct[ed] activities

17

towards the forum state with the intent to cause harm there." *Scotts Co.*, 145 F. App'x at 113. Therefore, personal jurisdiction cannot be maintained on this basis.

### D. Contractual Relationship with Healthstar

Healthstar argues Axene purposefully availed itself of Tennessee law as a party to the contract between Healthstar and Dynamic Vision. However, as explained above, Axene is not liable for any contract entered into by Dynamic Vision. *See* § III(A).

Even so, Healthstar asserts purposeful availment based on Axene's employees working on the Dynamic Vision contract because Axene must have known its employees would assist Healthstar, a corporation operating in Tennessee. This type of argument has been discussed by the Supreme Court of the United States. *See Walden v. Fiore*. 571 U.S. 277, 283–87 (2014). In *Walden*, the defendant, a police officer stationed at an airport in Georgia, seized funds from a couple at the airport during their travel to their residence in Nevada. *Id.* at 279–80. Although the defendant knew the couple was traveling to Nevada, he never purposefully availed himself of Nevada law. *Id.* at 290. The Supreme Court stated, "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum state." *Id.* at 291.

When Axene contracted with Dynamic Vision to give support to the Healthstar project, Axene was aware some of its employees' work would reach Tennessee. But Axene did not direct its employees to work on behalf of Healthstar; rather, it directed its employees to work for Dynamic Vision. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881–84 (2011) (explaining foreseeability is only one element in a court's personal jurisdiction inquiry). Any action directed towards Tennessee was the result of intentional contact by Dynamic Vision, not

18

Axene.  *See Burger King Corp.*, 471 U.S. at 476.  Axene made a contract in California, with a California corporation, headquartered in California.  That is not sufficient to establish that Axene purposefully availed itself of the laws of Tennessee.

None of Axene's actions, as asserted by Healthstar, demonstrate Axene purposefully availed itself of Tennessee law.  As a result, the Court need not assess the other elements of personal jurisdiction, as it lacks personal jurisdiction over Axene based on purposeful availment.  *See S. Mach. Co.* 410 F.2d at 381.

### IV.     CONCLUSION

The Court will **GRANT** Axene's motion to dismiss (Doc. 96) and **DISMISS** all claims against Axene **WITHOUT PREJUDICE**.

**An appropriate order will enter.**

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**